# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs February 25, 2014

## STATE OF TENNESSEE v. KRISTOPHER BLAKE KINCER

**Appeal from the Circuit Court for Sullivan County**
**No. S59,866    R. Jerry Beck, Judge**

---

**No. E2013-01740-CCA-R3-CD - Filed June 2, 2014**

---

The Defendant, Kristopher Blake Kincer, pleaded guilty as a Range I offender to theft of property valued at $1000 or more but less than $10,000, a Class D felony. *See* T.C.A. § 39-14-103 (Supp. 2013) (theft of property); 39-14-105(a)(3) (2010) (amended 2012) (grading of theft). The plea agreement called for a two-year sentence, and the trial court ordered that the sentence be served in confinement. On appeal, the Defendant contends that the trial court erred in denying alternative sentencing. We reverse the judgment of the trial court and remand the case for the trial court to consider whether the Defendant should be placed on community corrections.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;
Case Remanded**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Stephen M. Wallace, District Public Defender; and Joseph F. Harrison, Assistant District Public Defender, for the appellant, Kristopher Blake Kincer.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Senior Counsel; Barry P. Staubus, District Attorney General; and James F. Goodwin, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Defendant's conviction relates to the July 2011 theft of three wedding rings valued at $3900 from a home. He sold one of the rings at a jewelry store and received $250. After the victim reported the theft, the police discovered that the Defendant was the person who sold the ring. The Defendant accepted the State's two-year plea offer.

At the sentencing hearing, the presence report was received as an exhibit. Relative to the Defendant's statement about the offense, the report stated that the Defendant said he was camping with two people at a state park "staying messed up." He said he bought a diamond ring from one of them for $100 and sold it at the jewelry store. He said he did not know it was stolen, did not know the victim, and did not know where the victim's house was located.[1] He said he pleaded guilty because counsel advised him that he would be convicted because he sold the ring and faced a sentence of up to four years.

The presence report reflected that the Defendant had convictions for misdemeanor theft and driving with a revoked license, which occurred after the present offense. He had previous convictions for driving with a suspended license, misdemeanor drug possession, three counts of driving under the influence (DUI), and driving without having his driver's license in his possession. About three months after the present offense occurred, he was placed on probation for the driving with a suspended license and drug possession convictions, and his probation was revoked for failing to report to his probation officer, receiving new criminal charges, not paying his fines and fees, and not completing an alcohol and drug class, although he was reinstated to probation. He had a pending probation violation related to one of the DUI convictions and an unspecified driving offense. He had pending failure to appear charges related to the present case.

The thirty-one-year-old Defendant dropped out of high school but passed the GED exam. He reported childhood treatment for ADHD but had not sought treatment as an adult. He began using alcohol at age fifteen and used it daily between ages nineteen and twenty-one, although he reported his present use was limited to one or two beers monthly. He began using marijuana on the weekends at age sixteen. He smoked cocaine at age twenty-four for two to three months. He used Xanax daily from ages seventeen to nineteen. He used Oxycontin from age twenty until twenty-seven. He used oxycodone from age twenty-three until twenty-nine. He used heroin for "months" beginning at age twenty-seven. In June 2006, he underwent a twenty-eight-day alcohol and drug treatment program. He completed a thirty-day drug and alcohol program in June 2012, followed by a three-month program at a halfway house. He reported that he was currently attending Narcotics Anonymous meetings.

---

[1] Defense counsel stated at the sentencing hearing, "The crime . . . was taking some rings while he was a guest at somebody's house. He . . . didn't break in or anything[.]" The Defendant did not address in his testimony the discrepancy between counsel's statement to the court and the Defendant's statement to the presence report preparer, nor does the record resolve the discrepancy.

The Defendant's past employment included positions as a restaurant dishwasher and cook, construction laborer, custom wheel technician, and tire technician. He was unemployed but doing unspecified odd jobs at the time the report was prepared.

The Defendant testified that he lived with his ex-wife, with whom he had reconciled, and their eleven- and seven-year-old children. He said he was employed at a tire store with the possibility of becoming the owner. He made $1600 to $2000 per month. He said he had twelve to thirteen years' experience in tire sales. He said that he had previously enlisted in the Army and completed basic training but that after he was involved in a "conflict," the Army received medical records showing he had ADHD and discharged him under less than honorable circumstances.

The Defendant acknowledged his substance abuse problems and said prescription medications were his greatest problem. He said he had twice entered treatment programs voluntarily. Regarding his most recent rehabilitation, he said he completed a thirty-day program and stayed in an additional three-month program in a halfway house on the recommendation of his counselors. He said he currently attended Narcotics Anonymous meetings three to four times a week and went daily until he became employed. He said that despite the driving with a revoked license offense that occurred after the present offense, he did not drive any longer and that his wife drove him to and from work. He said he could pass a drug test. He agreed the theft offense that occurred after the present offense involved his taking scrap metal to sell in order to buy drugs.

The Defendant testified that after he received the presentence report, he learned of the outstanding probation violation warrant. He said that he had not had the opportunity to talk to anyone in the court system about the warrant and that he had asked his probation officer about it that morning but that the probation officer was "just kind of clueless over it." He said he had the same probation officer "the whole time." He acknowledged he would have to attend to the matter. Relative to his failure to appear in the present case, he said he was in a rehabilitation program at the time. He agreed the State dismissed the charge after learning he was in the program.

The Defendant testified that he could follow the conditions of release if he received an alternative sentence and that he was starting "a new chapter in his life." He said his ex-wife, a registered nurse, had recently started a new job and would be going out of town for training soon. He said her aunt and her mother would provide his transportation to and from work while his ex-wife was gone. He said he needed to care for their children while she was gone.

On cross-examination, the Defendant agreed that he had been on probation six times. He agreed he had violated his probation more than once. He agreed that one of the violations related to not completing drug and alcohol classes and not reporting. He agreed he had been charged with crimes occurring when he was on probation.

The trial court noted the Defendant's "lengthy . . . [h]ighly negative" prior record. It noted that the Defendant had completed rehabilitation, "some of which failed." The court noted the Defendant's "picking up new charges" and his pending probation violation warrant. As mitigating proof, the court noted that the present offense did not involve violence and that he had "turned over a new leaf." The court found that "the unfavorable factors heavily outweigh any favorable factor" and ordered that the Defendant serve his sentence in confinement.

On appeal, the Defendant contends that the trial court erred in denying him an alternative sentence. The State counters that the Defendant has not overcome the presumption of reasonableness afforded the trial court's determination and that he is not entitled to relief. We conclude that the trial court erred in failing to consider whether the Defendant should receive a community corrections sentence.

The length of a sentence "within the appropriate statutory range [is] to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). Our supreme court has applied the abuse of discretion standard with a presumption of reasonableness to "questions related to probation or any other alternative sentences." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

The Defendant is eligible for probation because his sentence is ten years or less and because his offense is not among those excluded from consideration for probation. *See* T.C.A. § 40-35-303(a) (2010). The Defendant was likewise eligible for community corrections. *See id.* § 40-36-106(a)(1)(A)-(F) (2010). Absent evidence to the contrary, he should be considered a favorable candidate for alternative sentencing because he is a standard offender convicted of a Class D felony. *See* T.C.A. § 40-35-102(6) (2010) (stating that an eligible defendant who is "an especially mitigated or standard offender convicted of a Class C, D or E felony should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary"); *see also State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). However, mere eligibility does not automatically entitle a defendant to probation or community corrections. *See State v. Fletcher*, 805 S.W.2d 785, 787 (Tenn. Crim. App. 1991); *State v. Beverly Dixon*, No. W2004-00194-CCA-R3-CD, slip op. at 10 (Tenn. Crim. App. June 30, 2005) (citing *State v. Ball*, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998)).

Regarding probation, the burden is on the defendant to establish that he is suitable for probation and "that probation [would] be in the best interest of the defendant and the public." *State v. Ring*, 56 S.W.3d 577, 586 (Tenn. Crim. App. 2001) (citing *State v. Baker*, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997)). Furthermore, the statutory provisions regarding alternative sentences must be read together with the Sentencing Act as a whole. *See Fletcher*, 805 S.W.2d at 787-88; *State v. Wagner*, 753 S.W.2d 145, 147 (Tenn. Crim. App. 1988).

When determining if incarceration is appropriate, a trial court should consider if:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1) (2010); *see also State v. Hooper*, 29 S.W.3d 1, 5 (Tenn. 2000).

As the trial court noted, the Defendant has a lengthy history of criminal conduct, and he has had the benefit of probation sentences in the past. The Defendant was found in a revocation proceeding to have violated his probation in two cases. He had an outstanding probation violation warrant from several years before the present offense. He committed another theft offense after the present offense, although he attributed it to his drug problem.

We note the approximate five-year gap between the Defendant's offenses that appears to correspond with his enrollment in the first treatment program. He was convicted of DUI occurring in 2003. He was convicted of an unspecified traffic offense, driving with a suspended license, and DUI in 2005. He was convicted of driving while his license was suspended and misdemeanor drug possession occurring in June 2011. The present offense occurred in July 2011. He was convicted of driving while his license was revoked occurring in March 2012, before he entered his second treatment program. He completed a thirty-day program in June 2013 and remained in a long-term program for an additional three months. After he returned home, he continued to attend Narcotics Anonymous meetings regularly and continued to do so at the time of the sentencing hearing in July 2013. He made efforts to reconcile with his ex-wife and to parent and support his children. He obtained employment

in a field in which he had several years' experience. He testified that he had quit driving and that his wife took him to and from work and to Narcotics Anonymous meetings.

Affording the trial court the presumption of reasonableness and given the Defendant's prior criminal record and past lack of compliance with the rules of probation, we conclude that the Defendant has not shown that the trial court abused its discretion in determining that he was not a suitable candidate for another sentence of probation. We note, though, that under the Tennessee Community Corrections Act, trial courts may sentence certain non-violent felony offenders to community-based alternatives to incarceration. *See* T.C.A. § 40-36-103(1) (2010); *State v. Grigsby*, 957 S.W.2d 541, 547 (Tenn. Crim. App. 1997) (stating that "trial courts are in the best position to ascertain an offender's amenability to a community corrections program"). Relative to eligibility for community corrections, Tennessee Code Annotated section 40-36-106 provides in pertinent part:

> (a)(1) An offender who meets all of the following minimum criteria shall be considered eligible for punishment in the community under the provisions of this chapter:
>
> (A) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (B) Persons who are convicted of property-related or drug-or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
>
> (C) Persons who are convicted of nonviolent felony offenses;
>
> (D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
>
> (E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; and
>
> (F) Persons who do not demonstrate a pattern of committing violent offenses.

The Defendant is an eligible offender for a community corrections sentence pursuant to section 40-36-106(a).

We note the Defendant's history of substance abuse was related to and contributed to his criminal conduct.  He has undertaken an extensive treatment regime, after which he continued attending Narcotics Anonymous meetings regularly.  He has made efforts to improve himself by ceasing to drive illegally, obtaining employment, and supporting and parenting his children.  He expressed his desire to live a productive life.  The record does not reflect any adverse credibility determination relative to his testimony.

We likewise note that the record does not reflect the trial court considered whether the Defendant should be sentenced to community corrections.  The Defendant was both eligible for a community corrections sentence and the type of offender the Community Corrections Act was designed to address.  Despite his history of criminal convictions, he did not have a history of violent offenses and was not convicted in this case of a violent offense.  Because of his criminal history, he was not a favorable candidate for probation, meaning that without the option of community corrections he would receive a sentence of incarceration. We conclude that the case must be remanded for the trial court to consider whether the Defendant should serve his sentence on community corrections.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is reversed.  The case is remanded, and the trial court shall consider whether a community corrections sentence is appropriate.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE